**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JANE DOE 1, *et al.*,

     Plaintiffs,

v.                                                                          Civ. No. 23-362 GBW/JHR

EASTERN NEW MEXICO UNIVERSITY
BOARD OF REGENTS, *et al.*,

     Defendants.

## ORDER GRANTING DEFENDANT EASTERN NEW MEXICO UNIVERSITY BOARD OF REGENTS'S MOTION FOR JUDGMENT ON THE PLEADINGS ON ALL HUMAN RIGHTS ACT CLAIMS IN COUNT III

THIS MATTER comes before the Court on Defendant Eastern New Mexico University Board of Regents's Motion and Memorandum for Judgment on the Pleadings on all Human Rights Act Claims in Count III (*doc. 108*), and the parties' accompanying briefing (*docs. 113, 117*).  Having reviewed the briefing and being otherwise fully advised regarding relevant case law, the Court will GRANT the Motion for Judgment on the Pleadings.

### I.    PROCEDURAL BACKGROUND

Plaintiffs Jane Doe 1, Jane Doe 2, and Jane Doe 3 (collectively, "Plaintiffs") bring a variety of state and federal claims against the Eastern New Mexico University Board of Regents ("ENMUBOR"), Glen de los Reyes, Meghan de los Reyes, Paul Weir, and Glen's Fitness Lab, LLC.  *Doc. 47* ¶¶ 108-174.  These claims are based on sexual abuse that Glen

1

de los Reyes inflicted on Plaintiffs while they were student-athletes at Eastern New Mexico University ("ENMU").  *See generally id*.

Plaintiffs filed the operative First Amended Complaint for Damages ("Complaint") on August 23, 2023.  *Doc. 47*.  Defendant ENMBOR filed the instant Motion for Judgment on the Pleadings ("Motion") on March 9, 2024.  *Doc. 108*.  In the Motion, Defendant ENMBOR requests that the Court dismiss Plaintiffs' New Mexico Human Rights Act Claim (Count III) against it.  *See generally id*.  Plaintiffs responded to the Motion on March 25, 2024.  *Doc. 113*.  Briefing on the Motion was complete on April 8, 2024, *doc. 118*, with the filing of Defendant ENMUBOR's reply, *doc. 117*.

## II.   LEGAL STANDARDS

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings pursuant to Rule 12(c) proceeds under the same standard of review applicable to a motion to dismiss for failure to state a claim made under Rule 12(b). *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012).  Thus, to survive a motion for judgment on the pleadings under Rule 12(c), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This standard does not require "detailed factual allegations," but it does require more than "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When ruling on a 12(c) motion, the court must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Leverington*, 643 F.3d at 723 (quoting *Dias v. City & Cnty. Of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)). However, the court need not accept the truth of any legal conclusions. *Iqbal*, 556 U.S. at 678.

The plausibility standard "does not impose a probability requirement." *Twombly*, 550 U.S. at 556. Rather, "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The complaint must only be "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct"; otherwise, the plaintiff has not shown entitlement to relief. *Id.* at 679.

### III.   FACTUAL BACKGROUND

The facts of this case center around sexual abuse that Plaintiffs, student-athletes at ENMU at all relevant times, endured at the hands of Glen de los Reyes, the husband

of former head coach of the ENMU women's basketball team, Meghan de los Reyes ("Coach de los Reyes"). For the purposes of this Motion, the following section provides an overview of the relevant facts of this case supporting Plaintiffs' assertion that ENMU, as a public accommodation and in offering Plaintiffs educational services, "discriminated against them based on their sex and gender by refusing to protect them against a known risk of sexual violence," in violation of the New Mexico Human Rights Act. *Doc. 47* ¶¶ 123-26. As noted above, for the purposes of a motion for judgment on the pleadings, the Court "assume[s] the truth of all well-pleaded facts in the complaint, and draw[s] all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Leverington*, 643 F.3d at 723.

Plaintiffs attended ENMU as undergraduate students during the 2022-2023 academic school year. *Doc. 47* ¶ 1. ENMU is a public university located in Portales, New Mexico. *Id*. ¶ 2. Plaintiffs enrolled at ENMU on academic scholarships to play women's basketball under Coach de los Reyes. *Id*. ¶¶ 3, 32, 35.

Coach de los Reyes required members of the ENMU women's basketball team to be seen and treated by her husband, Glen de los Reyes, for physical therapy "treatments." *Id*. ¶¶ 12, 15. During the 2021-2022 school year, two players reported to ENMU athletic department staff that Glen de los Reyes had sexually assaulted them during their treatments. *Id*. ¶ 27. Despite these allegations, players were still required to see Glen de los Reyes for treatment during the 2022-2023 school year. *Id*. ¶ 41.

4

Plaintiffs received treatments from Glen de los Reyes while members of the 2022-2023 ENMU women's basketball team.  *Id*. ¶¶ 45, 54, 63.  Plaintiffs allege that Glen de los Reyes sexually assaulted them during their treatment sessions with him.  *Id*.

Plaintiffs' allegations of Glen de los Reyes's sexual abuse were reported to ENMU athletic department staff – including to Athletic Director Paul Weir.  *Id*. ¶¶ 47, 76, 78.  However, Plaintiffs contend that ENMU athletic department staff took no action in response to their reports of abuse.  *Id*.  ¶¶ 47, 62, 79-80.  Eventually, Plaintiffs' allegations of abuse were reported to the ENMU human resources department, and an investigation ensued.  *Id.* ¶¶ 80, 82-84, 87, 95.

In the meantime, Plaintiffs experienced retaliation for their reporting and refusal to see Glen de los Reyes for further treatment sessions.  *Id*. ¶¶ 52, 86, 88-91, 103. Plaintiffs maintain that they were forced to run extra laps at practice, lost playing time, were treated as outcasts on the team, and were ignored.  *Id*. ¶¶ 90, 103.  At one point, Coach de los Reyes commented that Plaintiffs "obviously do not like men," making insinuations about Plaintiffs' sexual orientations.  *Id*.  Additionally, Plaintiffs allege that Paul Weir threatened them and sought to intimidate them from continuing to cooperate with the investigation by the ENMU human resources department.  *Id*. ¶ 100.

Nevertheless, Plaintiffs continued to cooperate with the ENMU human resources department's investigation.  *Id*. ¶ 101.  Eventually, Glen de los Reyes was banned from the ENMU campus, and Coach de los Reyes's tenure as head coach of the ENMU

women's basketball team ended following the 2022-2023 school year.  *Id*. ¶¶ 3, 96.

Plaintiffs finished the 2022-2023 school year remotely and transferred to new schools.

*Id*. ¶ 107.

### IV.   ANALYSIS

Defendant ENMUBOR moves for judgment on the pleadings on Plaintiffs'

"Violation of the New Mexico Human Rights Act by ENMUBOR" claim (Count III) in

which Plaintiffs argue that ENMU, as a public accommodation, violated the New

Mexico Human Rights Act ("NMHRA") by "discriminat[ing] against them based on

their sex and gender by refusing to protect them against a known risk of sexual

violence."  *Doc. 47* ¶ 126; *see generally doc. 108*.  Defendant ENMUBOR contends that

ENMU is not subject to the requirements of the NMHRA because it is not a "public

accommodation."  *Doc. 108* at 4-9.  Plaintiffs maintain that their allegations "place

ENMU comfortably within the [NMHRA's] textual definition of public

accommodation."  *Doc. 113* at 8-11.  The Court will dismiss Plaintiffs' NMHRA claim

because the aspect of ENMU under review is not a public accommodation – specifically,

ENMU's manner and method of administering its internal, nonpublic athletic program.

  i.   *The nonpublic, internal athletic program of ENMU is not a public*
      *accommodation.*

The NMHRA prohibits "any person in any public accommodation to make a

distinction, directly or indirectly, in offering or refusing to offer its services, facilities,

accommodations or goods to any person because of . . . sex, sexual orientation, [or]

gender identity[.]"  N.M. Stat. Ann. § 28-1-7(F).  This section of the NMHRA

contemplates liability for those who engage in discriminatory acts that result in denial

of the benefits of a public accommodation.  N.M. Stat. Ann. § 28-1-2(H) (1969, as

amended through 2021) defines "public accommodation" to mean "any establishment

that provides or offers its services, facilities, accommodations or goods to the public, but

does not include a bona fide private club or other place or establishment that is by its

nature and use distinctively private[.]"[1]  In the traditional sense, a public

accommodation offers services, facilities, and accommodations or goods to the general

public.

Although New Mexico courts did not establish a precise test under the pre-2023

iteration of the NMHRA for when a university function or service constitutes a public

accommodation, the New Mexico Supreme Court has held that certain aspects of a

university are not a public accommodation.  *See Human Rights Comm'n of New Mexico v.*

*Bd. of Regents of the Univ. of New Mexico Coll. Of Nursing*, 624 P.2d 518, 519-20 (N.M.

1981).  In *Regents*, a Black student alleged that the University of New Mexico College of

Nursing violated the public accommodation provision of the NMHRA by

---

[1] In 2023, the New Mexico legislature amended § 28-1-2(H) of the NMHRA to restate the definition of "public accommodation" to expressly include "any governmental entity" in addition to "any establishment."  *See* 2023 N.M. Laws, ch. 29, § 1(H)) (signed into law as H.B. 207, Mar. 24, 2023).  This amendment went into effect on June 16, 2023.  Plaintiffs' NMHRA claims originate from facts and circumstances that arose while they were students at ENMU from August 2022 to May 2023.  *See generally doc. 47*.  Accordingly, the pre-2023 iteration of the NMHRA and its definition of "public accommodation" – which excludes the phrase "any governmental entity" – applies.

discriminating against her based on race by refusing to provide her with an opportunity to immediately retake a course she failed despite allowing students of other races the opportunity to do so.  *Id*. at 518.  The Supreme Court denied the student's NMHRA claim, holding that "[u]niversities are not public accommodations in the ordinary and usual sense of the words," as indicated by the historical and traditional meanings of the term public accommodation.  *Id*. at 519-20 (New Mexico Supreme Court analyzing what traditionally constitutes a public accommodation – naming lodging, entertainment, and public transportation as examples).  However, the Supreme Court declared its ruling "should be construed narrowly and is limited to the [u]niversity's manner and method of administering its academic program," and did not answer the "question of whether in a different set of circumstances the [u]niversity would be a 'public accommodation' and subject to the jurisdiction of the Human Rights Commission."  *Id*. at 520.

Upon consideration of the guiding principles discerned in *Regents* and the plain language of the NMHRA, the Court finds that a university's manner and method of administering its athletic program is not a public accommodation within the meaning of the NMHRA.  As an initial matter, the Court notes that state universities have both public and nonpublic functions.  State universities offer their services, facilities, accommodations, or goods to the public by, to name one example, marketing to the public at large to apply for admission in its academic programs.  However, state universities also provide certain services, facilities, accommodations, or goods to a

8

limited group of people – its admitted students.  State university services, facilities, accommodations, or goods offered exclusively to admitted students are not open to the public.  For example, a member of the general public cannot register for a class at a state university without first being admitted to the university after application.  Similarly, a member of the general public cannot join a university athletic program without first being an admitted student.  Here, Plaintiffs' allegations concern their involvement with the ENMU athletic department as student-athletes on the ENMU women's basketball team.  Involvement with the ENMU athletic department as a member of an ENMU athletic team is further limited to only certain admitted students and is not open to members of the general public.

The central thrust of Plaintiffs allegations concerns their participation in the ENMU athletic program and how the faculty and staff of that program should have responded to their reports of sexual assault.  Like the plaintiff in *Regents* who challenged the manner and method of how a university administered its nonpublic educational program, Plaintiffs challenge the manner and method of how ENMU administered its nonpublic athletic program.  While the holding in *Regents* is to be construed narrowly, the logical extension of *Regents'* reasoning is that ENMU, in administering its nonpublic athletic program, is not a public accommodation in the ordinary and usual sense of the words as it is not offering its services, facilities, accommodations or goods that it offers its student-athletes to the general public.

9

Plaintiff cites to case law purporting to show that, even before the NMHRA was amended, New Mexico courts broadened the *Regents* definition of public accommodation.  However, the holdings of these cases are not contrary to the Court's analysis.  First, in *Elane Photography, LLC v. Willock*, the New Mexico Court of Appeals held that a photography business that advertised its services to the public at large constituted a public accommodation under the pre-2023 NMHRA definition of public accommodation.  284 P.3d 428, 436 (N.M. Ct. App. 2012).  In making this conclusion, the court emphasized that, "the NMHRA was meant to reflect modern commercial life and expand protection from discrimination to include most establishments that typically operate a business in public commerce."  *Id*.  Here, participation in ENMU's athletic program is not marketed to the public at large as a commercial enterprise.  Rather, ENMU recruits and solicits specific members of the public to apply to the school to participate on their athletic teams as students of ENMU.  *See doc. 47* ¶ 32 ("ENMU, specifically Coach de los Reyes, recruited Plaintiffs . . . in 2022 for the ENMU women's basketball team.").  Second, in *Johnson v. Board of Educ. for Albuquerque Pub. Sch.*, the New Mexico Court of Appeals held that a public high school, in offering its services to the community as a whole, constituted a public accommodation under the pre-2023 NMHRA definition of public accommodation.  535 P.3d 687, 690-93 (N.M. Ct. App. 2023).  In making this determination, the court stated that its holding was not contrary to *Regents*.  *Id*. at 692.  Rather, the Court interpreted *Regents* "to be a case that most

10

directly pertains to state universities . . .", and it differentiated public high schools from state universities because public high schools "provide[] a constitutionally mandated function – that is, the provision of secondary education to primarily minor New Mexico residents." *Id*. at 689 (citing to N.M. Const. art. XII, § 1). By contrast, although ENMU is a public university, its students are not compelled to attend by constitutional mandate. Additionally, ENMU is allowed to be selective in deciding who can participate in its educational program and its athletic program. Thus, neither *Elane Photography* nor *Johnson* is contrary to the Court's analysis in the instant case.

Plaintiff also argues that the 2023 amendment of the NMHRA to restate the definition of "public accommodation" to expressly include "any governmental entity," renders the reasoning in *Regents* obsolete. *Doc. 113* at 6. However, the amendment does not change the Court's analysis of the application of the pre-2023 NMHRA definition of public accommodation to the facts of this case. If the New Mexico legislature intended to include all government entities as public accommodations in the pre-2023 iteration of the NMHRA, it would have done so. *See S. Union Gas Co. v. New Mexico Pub. Serv. Comm'n*, 482 P.2d 913, 914 (N.M. 1971) ("When the legislature has wanted to include sovereigns or other governmental bodies in its statutes, it has known how to do so."), *overruled on other grounds by De Vargas Sav. & Loan Ass'n v. Campbell*, 535 P.2d 1320 (N.M. 1975). Rather, the New Mexico legislature's choice to amend the NMHRA in 2023 supports the logic of *Regents* that certain entities, for example state universities, were

not necessarily covered by the previous language of the NMHRA.  In addition, *Regents* is binding precedent on this Court for state law public accommodation claims which occurred prior to the legislative change.  *See Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) ("When the federal courts are called upon to interpret state law, the federal courts must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule.").

While the Court acknowledges the gravity of Plaintiffs' allegations regarding the manner and method in which ENMU administered its athletic program in this instance, the Court will dismiss Plaintiffs' NMHRA claim because the aspect of ENMU under review was not a public accommodation.

    *ii.    This holding also forecloses Plaintiffs' implied claim for retaliation under the NMHRA.*

Count III of the First Amended Complaint appears to bring a claim only under § 28-1-7(F).  *See doc. 47* ¶ 121-131.  However, Plaintiffs' briefing on the motion also refers to retaliation and retaliatory action.  *See doc. 113* at 3, 5, 7, 8.  A claim of retaliation under the NMHRA is codified in § 28-1-7(I)(2).[2]  This provision makes it unlawful for any person or employer to retaliate against "any person who has opposed any unlawful

---

[2] Plaintiffs' Complaint and briefing never cites to § 28-1-7(I)(2).  *See generally doc. 47*, *see also doc. 113* (Plaintiffs' response only quoting § 28-1-7(F) of the NMHRA); *see also doc. 113* at 8 (Plaintiffs' response citing to a New Mexico Supreme Court case involving unlawful retaliatory action under the NMHRA in the context of an adverse employment action).  Additionally, Plaintiffs cite to N.M. Stat. Ann. § 10-16C-2(D) to point the Court to a statutory definition of "retaliatory action."  *Doc. 113* at 3.  N.M. Stat. Ann. § 10-16C-2(D) is the definition of retaliatory action as it pertains to the New Mexico Whistleblower Protection Act and is irrelevant here.

discriminatory practice or has filed a complaint, testified or participated in any proceeding under the HRA[.]"  N.M. Stat. Ann. § 28-1-7(I)(2).  The only "unlawful discriminatory practice" alleged by Plaintiffs is the violation of § 28-1-7(F).  Given the analysis above, ENMU did not violate that statute because it is not a public accommodation.  Furthermore, Plaintiffs do not assert that any of the retaliation they endured occurred after they filed a complaint, testified, or participated in any proceeding under the HRA.  Therefore, to the extent Plaintiffs are making a retaliation claim under the HRA, it is subject to dismissal.

## V.    CONCLUSION

For the foregoing reasons, Defendant Eastern New Mexico University Board of Regents's Motion and Memorandum for Judgment on the Pleadings on all Human Rights Act Claims in Count III (*doc. 108*) is GRANTED.  Count III of Plaintiffs' Complaint (*doc. 47*) is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**