IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JANE DOE 1, *et al.*,

    Plaintiffs,

v.                                                      Civ. No. 23-362 GBW/JHR

EASTERN NEW MEXICO UNIVERSITY
BOARD OF REGENTS, *et al.*,

    Defendants.

**ORDER GRANTING DEFENDANT EASTERN NEW MEXICO UNIVERSITY BOARD OF REGENTS'S MOTION FOR JUDGMENT ON THE PLEADINGS ON ALL WHISTLEBLOWER PROTECTION ACT CLAIMS IN COUNT IV**

THIS MATTER comes before the Court on Defendant Eastern New Mexico University Board of Regents's Motion and Memorandum for Judgment on the Pleadings on all Whistleblower Protection Act Claims in Count IV (*doc. 102*), and the parties' accompanying briefing (*docs. 105, 114*).  Having reviewed the briefing and being otherwise fully advised regarding relevant case law, the Court will GRANT the Motion for Judgment on the Pleadings.

    **I.**    **PROCEDURAL BACKGROUND**

Plaintiffs Jane Doe 1, Jane Doe 2, and Jane Doe 3 (collectively, "Plaintiffs") bring a variety of state and federal claims against the Eastern New Mexico University Board of Regents ("ENMUBOR"), Glen de los Reyes, Meghan de los Reyes, Paul Weir, and Glen's Fitness Lab, LLC.  *Doc. 47* ¶¶ 108-174.  These claims are based on sexual abuse that Glen

1

de los Reyes inflicted on Plaintiffs while they were student-athletes at Eastern New Mexico University ("ENMU").  *See generally id*.

Plaintiffs filed the operative First Amended Complaint for Damages ("Complaint") on August 23, 2023.  *Doc. 47*.  Defendant ENMUBOR filed the instant Motion for Judgment on the Pleadings ("Motion") on February 22, 2024.  *Doc. 102*.  In the Motion, Defendant ENMUBOR requests that the Court dismiss Plaintiffs' New Mexico Whistleblower Protection Act claim (Count IV) against it.  *See generally id*.  Plaintiffs responded to the Motion on March 8, 2024.  *Doc. 105*.  Briefing on the Motion was complete on March 26, 2024, *doc. 115*, with the filing of Defendant ENMUBOR's reply, *doc. 114*.

## II.   LEGAL STANDARDS

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings pursuant to Rule 12(c) proceeds under the same standard of review applicable to a motion to dismiss for failure to state a claim made under Rule 12(b).  *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012).  Thus, to survive a motion for judgment on the pleadings under Rule 12(c), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face."  *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This standard does not require "detailed

factual allegations," but it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When ruling on a 12(c) motion, the court must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Leverington*, 643 F.3d at 723 (quoting *Dias v. City & Cnty. Of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)).  However, the court need not accept the truth of any legal conclusions.  *Iqbal*, 556 U.S. at 678.

The plausibility standard "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.  Rather, "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  The complaint must only be "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555.  However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct"; otherwise, the plaintiff has not shown entitlement to relief.  *Id*. at 679.

### III. FACTUAL BACKGROUND

As noted above, for the purposes of a motion for judgment on the pleadings, the Court "assume[s] the truth of all well-pleaded facts in the complaint, and draw[s] all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Leverington*, 643 F.3d at 723. The facts of this case center around sexual abuse that Plaintiffs, student-athletes at ENMU at all relevant times, endured at the hands of Glen de los Reyes, the husband of former head coach of the ENMU Women's Basketball Team, Meghan de los Reyes ("Coach de los Reyes"). As the Court will resolve this Motion on the issue of whether Plaintiffs have adequately alleged that they are "public employees" pursuant to the New Mexico Whistleblower Protection Act, the focus will be on the facts relevant to that assertion.

Plaintiffs attended ENMU as undergraduate students during the 2022-2023 academic school year. *Doc. 47* ¶ 1. ENMU is a public university located in Portales, New Mexico. *Id*. ¶ 2. Plaintiffs enrolled at ENMU on athletic scholarships to play women's basketball. *Id*. ¶ 35. Plaintiffs further allege as follows:

> In order to remain on their athletics [sic] scholarships, Plaintiffs were required to maintain their positions and standing on the ENMU women's basketball team. *Id*. ¶ 36.

> Thus, to remain on their athletic scholarships, [Plaintiffs] had to stay in Coach De Los Reyes' good graces. *Id*. ¶ 38.

> Their athletic scholarships depended on their performance on the basketball court. *Id*. ¶ 51.

4

As student athletes playing for ENMU's women's basketball team and receiving remuneration from ENMU, Plaintiffs qualify as public employees under the WPA. *Id*. ¶ 134.

### IV. ANALYSIS

Defendant ENMUBOR moves for judgment on the pleadings on Plaintiffs' "Retaliation in Violation of the New Mexico Whistleblower Protection Act" claim (Count IV) in which Plaintiffs argue that ENMU violated the New Mexico Whistleblower Protection Act ("WPA") by retaliating against Plaintiffs following their "several protected disclosures to ENMU's athletics department . . ." *Doc. 47* ¶ 136. Defendant ENMUBOR argues that Plaintiffs, as student-athletes at ENMU, have not sufficiently alleged facts to support that they were "public employees" protected by the WPA. *Doc. 102* at 5-7.[1] In their response to the Motion, Plaintiffs contend that the right to control test – a test used to determine whether an employer-employee relationship exists – and the WPA's text, structure, and purpose, stand for the proposition that Plaintiffs are "public employees" as defined by the WPA. *Doc. 105* at 5-11. After review of the statutory language, structure, and purpose, and relevant New Mexico caselaw, the Court agrees with Defendant ENMUBOR – Plaintiffs have not alleged sufficient facts to support a finding that they are "public employees" as defined by the WPA.

---

[1] Defendant ENMUBOR also argues that Plaintiffs have failed to allege sufficient facts to show that ENMU or ENMUBOR took any "discriminatory or adverse employment action against Plaintiffs." *Doc. 102* at 7-8. This argument appears to rest largely on the same proposition as the first argument – that Plaintiffs have failed to sufficiently allege an employment relationship between Plaintiffs and ENMU. To the extent that the argument is broader, the Court need not and will not address it.

5

### i. *The WPA generally.*

The WPA forbids public employers from "tak[ing] any retaliatory action against a public employee because the public employee" engages in protected conduct. N.M. Stat. Ann. § 10-16C-3. "By creating a cause of action against employers who retaliate against an employee for engaging in conduct that the WPA protects, . . . the WPA 'promotes transparent government and the rule of the law,'" *Velasquez v. Regents of N. N.M. Coll.*, 484 P.3d 970, 979 (N.M. Ct. App. 2020) (quoting *Flores v. Herrera*, 384 P.3d 1070, 1072 (N.M. 2016)), and encourages "employees to report illegal practices without fear of reprisal by their employers," *Flores*, 384 P.3d at 1072 (internal citations and quotations omitted). In essence, the WPA imposes duties on a public employer and subjects it to liability for a breach of those duties against its public employees.

### ii. *Definition of "public employees" under the WPA.*

Under New Mexico law, the guiding principle for a court construing a statute "is to determine and give effect to legislative intent." *El Paso Elec. Co v. N.M. Pub. Regul. Comm'n*, 246 P.3d 443, 446 (N.M. 2010) (quoting *N.M. Indus. Energy Consumers v. N.M. Pub. Regul. Comm'n*, 168 P.3d 105, 112 (N.M. 2007)). To determine legislative intent, the Court looks "not only to the language used in the statute, but also to the purpose to be achieved and the wrong to be remedied," *Hovet v. Allstate Ins. Co.*, 89 P.3d 69, 72 (N.M. 2004) (citations omitted), and reads the provisions of a statute "together with other statutes *in pari materia* under the presumption that the legislature acted with full

6

knowledge of relevant statutory and common law," *New Mexico ex rel. Quintana v. Schnedar*, 855 P.2d 562, 564 (N.M. 1993) (citing *Inc. Cnty. Of Los Alamos v. Johnson*, 776 P.2d 1252, 1253 (N.M. 1989)). Of course, "any analysis of what the Legislature intended to protect must be driven primarily by the plain language of the [WPA]." *Lerma v. State*, 541 P.3d 151, 156 (N.M. Ct. App. 2023).

Plaintiff maintains that the Court must look to common-law definitions to determine whether an employer-employee relationship exists between Plaintiffs and ENMU because "the [WPA] does not define 'employee[.]'" *Doc. 105* at 6. This argument fails at a fundamental level because the WPA unequivocally defines the material term of "public employee." Consequently, the Court must apply the statutory definition as opposed to any common law construct. Moreover, the cases cited by Plaintiffs are not helpful when determining whether a person falls within the WPA definition. *See doc. 105* at 7-8. In each of those cases, the respective court was applying the "right to control" and "economic realities" tests in the context of distinguishing employees from independent contractors for the purposes of taxation and wage protections. As explained further below, the issue here is not whether the Plaintiffs work for ENMU as employees or independent contractors, but whether they "work" for ENMU at all.

7

The WPA defines "public employee" as "a person who works for … a public employer."[2]  N.M. Stat. Ann. 10-16C-2(B).  Unfortunately, the WPA does not define "work" or "works for."  As did the New Mexico Court of Appeals in *Velasquez*, this Court will accord the term "work" its broad ordinary meaning from the Merriam-Webster Dictionary – "perform[ing] work or fulfill[ing] duties regularly for *wages or salary*."  *Work*, Merriam-Webster Dictionary, https://merriam-webster.com/dictionary/work (last visited May 31, 2024) (emphasis added); *see Velasquez*, 484 P.3d at 980 (N.M. Court of Appeals using Merriam-Webster Dictionary to define and give the phrase "waste of funds" its broad ordinary meaning in interpreting the WPA).  Indeed, if the legislature intended to include hypothetical public employees who are not compensated in exchange for their employment, they could have easily done so.  *See* N.M. Stat. Ann. 41-4-3(F)(3) (definitions section for the New Mexico Tort Claims Act defining "public employee" to include "persons acting on behalf of or in service of a governmental entity in any official capacity, *whether with or without compensation*") (emphasis added); *see also Celaya v. Hall*, 85 P.3d 239, 242 (N.M. 2004).

Having concluded that a public employee under the WPA must perform work for wages or salary, the Court must define "wages" and "salary."  Returning to the

---

[2] The definition also includes a person who "contracts with a public employer."  N.M. Stat. Ann. 10-16C-2(B).  However, Plaintiffs do not argue that this phrase impacts the analysis of whether they are included in the statute.  Moreover, the Court of Appeals of New Mexico has interpreted this phrase to simply eliminate any distinction between at-will and contract employees.  *Velasquez v. Regents of N.M. Coll.*, 484 P.3d 970, 990 (N.M. Ct. App. 2020).

Merriam-Webster Dictionary, one finds that "wages" are a "payment usually of money for labor or services usually according to contract on a hourly, daily or piecework basis." *Wages*, Merriam-Webster Dictionary, https://merriam-webster.com/dictionary/wages (last visited May 31, 2024). "Salary" is a "fixed compensation paid regularly for services." *Salary*, Merriam-Webster Dictionary, https://merriam-webster.com/dictionary/salary (last visited May 31, 2024). Still, the full picture of what constitutes "work" under the WPA remains unclear due to the circular nature of the dictionary definition of "work." *See Work*, Merriam-Webster Dictionary (definition of "work" including the phrase "to perform work"). In *Johnson v. Nat'l Collegiate Athletic Assoc.*, after a comprehensive review of the definition of "work" in the FLSA context, the Third Circuit Court of Appeals defined it as an activity "controlled by an employer and pursued necessarily and primarily for that employer's benefit." 2024 WL 3367646 at *9 (3d. Cir. July 11, 2024) (holding that college athletes can be employees under the FLSA in some circumstances). Given the similar purpose of worker protection between the FLSA and New Mexico's WPA, this Court finds that definition persuasive and appropriate for the instant context as well.

Given the definitions of work, wages, and salary, the Court holds that, to be a "public employee" under the WPA, (i) a person must perform an activity controlled by a public employer; (ii) that activity is a service to the public employer pursued necessarily and primarily for the public employer's benefit; and (iii) the person is paid

9

for that service either by a fixed compensation or on an hourly, daily or piecework basis. With these requirements in mind, the Court will turn to the question of whether Plaintiffs' allegations are sufficient to make a plausible claim that they are public employees under the WPA.

> iii. *Plaintiffs have not presented a plausible claim that they "worked for" ENMU such that they would qualify as "public employees" as defined by the WPA.*

First, the only remuneration Plaintiffs allege they received was their athletic scholarship. *See generally doc. 47*. As a scholarship is not paid on an hourly, daily or piecework basis, it does not qualify as wages. Thus, the question narrows to whether their athletic scholarship constitutes compensation paid regularly for services such that it falls within the ordinary definition of salary. The factual allegations in the Complaint regarding the particulars of the Plaintiffs' athletic scholarships are minimal and generally conclusory. As catalogued above, Plaintiffs generally state the following: (i) they had athletic scholarships, (ii) they needed to maintain their performance on the basketball court, and (iii) to remain on their athletic scholarships, they had to stay in Coach de los Reyes' good graces. *Doc. 47*, ¶¶ 35, 36, 38. Plaintiffs do not identify (i) the financial value of their scholarships, (ii) the length of their scholarships (e.g. one-year versus four-years), (iii) the specific terms which could lead to cancellation or non-renewal of the scholarships, (iv) the immediacy of the impact of any such cancellation, (v) whether the school withheld payroll taxes on the scholarship value, or (vi) whether

they reported the scholarship value as income. As explained below, these specifics are crucial to determine whether the scholarships were compensation for services.

While there appears to be no precedent on the question of athletic scholarships making student-athletes employees of their school for the purposes of whistleblower statutes, the Internal Revenue Service ("IRS") has weighed in on the issue of whether athletic scholarships are payments for services. The IRS's interest arises because, if an athletic scholarship is payment for services, such scholarships would constitute taxable income. *See* 26 U.S.C. § 117(c)(1) (scholarship "which represents payment for. . . other services by the student" is not a "qualified scholarship" exempt from gross income). Since 1977, the IRS has ruled that a noncancelable single-year athletic scholarship granted with an expectation that the individual will play a given sport would not be taxable income because it was not paid for services. *See* Rev. Rul. 77-263, 1977-2 C.B. 47. This position has been reaffirmed as recently as 2014 by the Commissioner of the IRS. *See* Letter from John A. Koskinen, Comm'r, Internal Revenue Serv., to Richard Burr, U.S. Senate, 2014-0016 (Apr. 9, 2014), https://www.irs.gov/pub/irs-wd/14-0016.pdf; *see also* NCAA Publications, *2022-23 Division II Manual* (Aug. 2022) ("Student-athletes may not be compensated by a member institution for participating in a sport but may receive educational and other benefits . . ."). Based on this position, athletic scholarships have, as a default, long been treated as a non-taxable benefit. Without more particular factual

allegations, the Court cannot conclude that Plaintiffs' athletic scholarships are payment for services.[3]

Second, Plaintiffs' allegations completely fail to plausibly claim that their participation in basketball was "pursued necessarily and primarily for that employer's benefit."[4] *Johnson*, 2024 WL 3367646 at *9. There are no allegations that the fielding of the ENMU women's basketball team was necessarily and primarily for the benefit of ENMU rather than a common extra-curricular activity creating at best indirect and attenuated economic benefit for ENMU. For example, there are no allegations that ENMU earned revenue, let alone profit, from Plaintiffs' basketball team. *See Berger v. Nat'l Collegiate Athletic Assoc.*, 843 F.3d 285, 294 (7th Cir. 2016) (Hamilton, J., concurring) (concurring with holding that student athletes are not employees under the FLSA as a matter of law but cautioning that the answer may be different "in so-called revenue sports [which] involve billions of dollars of revenue for colleges and universities.").

Based on the factual allegations in the Complaint, Plaintiffs have not presented a plausible claim that they "worked for" ENMU such that they would qualify as "public employees" as defined by the WPA. Accordingly, the Court will dismiss Count IV of Plaintiffs' Complaint without prejudice.

---

[3] Indeed, making such a conclusion on the current allegations could subject Plaintiffs to past and future tax consequences pursuant to 26 U.S.C. § 117.

[4] Plaintiffs also fail to allege any facts to support the requirement that ENMU controlled Plaintiffs' activity sufficient for it to qualify as work. *See generally doc. 47*. Many facts regarding control are described in their Response but such facts cannot be considered in the context of a motion for judgment on the pleadings. *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995).

## V. CONCLUSION

For the foregoing reasons, Defendant Eastern New Mexico University Board of Regents's Motion and Memorandum for Judgment on the Pleadings on all Whistleblower Protection Act Claims in Count IV (*doc. 102*) is GRANTED. Count IV of Plaintiffs' Complaint (*doc. 47*) is DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**