IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JANE DOE 1, JANE DOE 2,
and JANE DOE 3,

      Plaintiffs,

v.                                                No. 23-cv-00362-GBW-JHR

EASTERN NEW MEXICO UNIVERSITY
BOARD OF REGENTS,
MEGHAN DE LOS REYES in her individual
capacity,
PAUL WEIR in his individual capacity,
GLEN'S FITNESS LAB, and
GLEN DE LOS REYES,

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION TO DENY [130] PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

      This matter is before the me on Plaintiffs' Motion for Leave to File Second Amended Complaint. [Doc. 130]. Defendants jointly responded [Doc. 136], and Plaintiffs replied [Doc. 150]. An oral argument hearing was also held. [Doc 173]. The Court referred this motion to the undersigned for analysis and a proposed disposition. [Doc 276]. For the reasons stated below, I recommend the Court deny the motion and filing of the proposed second amended complaint.

      **I.**     **BACKGROUND**

**A. Plaintiffs' Claims.**

      Plaintiffs allege that Glen De Los Reyes sexually assaulted them under the guise of physical therapy and massage treatments while they played collegiate basketball at ENMU for head coach Meghan De Los Reyes, Glen De Los Reyes' wife. [Doc. 38, at 2, 3]. They contend that Meghan De Los Reyes retaliated against them if they resisted or told anyone about the alleged abuse. *Id.*

1

Plaintiffs further allege that athletic director Weir and ENMU officials were aware of the alleged abuse but repeatedly failed to act. *Id.* at 4. As a result, Plaintiffs allege that they were forced to transfer from ENMU, missed a season of NCAA eligibility, and suffered serious mental-health injury. *Id.* at 5. Plaintiffs' first amended complaint pleads violations of the New Mexico Civil Right Act, the New Mexico Human Rights Act, New Mexico Tort Claims Act ("NMTCA"), battery and assault, New Mexico privacy law, and their Title IX rights. *Id.* Plaintiffs now seek leave to amend to add additional federal constitutional and a state "voyeurism" claim. [Doc. 130-1].

### B. Briefing Summary.

1. Plaintiffs' motion for leave to file second amended complaint [Doc. 130].

Plaintiffs argue they again should be allowed to amend their complaint because of recently discovered evidence they could not have procured prior to the pleading amendment deadline on September 20, 2023. [Doc. 130, at 3]. The purportedly new evidence concerns when reports of abuse by Glen De Los Reyes' reached Weir and ENMU employees. *Id.* at 5–6. Plaintiffs believe this evidence gives rise to federal constitutional claims which could not have been asserted earlier. They argue no prejudice will befall Defendants because Plaintiffs have already pled state constitutional claims and therefore new federal allegations will not "assert novel or unforeseeable claims and [will] not substantively alter or change the issues confronting Defendants." *Id.* at 6. Plaintiffs attach a proposed Second Amended Complaint with new claims of violation of procedural and substantive due process and equal protection under the Fourteenth Amendment, retaliation under the First Amendment, and state law "voyeurism." [Doc. 130-1]; [Docs. 130-2, 130-3].

2. Defendants' joint response in opposition [Doc. 136].

2

Defendants vociferously dispute the premise that discovery has given rise to these new claims. [Doc. 136, at 4, 5]. They maintain Plaintiffs could have included federal constitutional and voyeurism claims in earlier pleadings but chose not to, opting instead to plead only state law claims. *Id.* Defendants argue Plaintiffs lack good cause under Rule 16(b)(4) to modify the scheduling order to allow these new claims to proceed. *Id.* at 8. They allege Plaintiffs have long "possessed information regarding the timing of [Defendant] Weir's supposed knowledge of alleged sexual assaults" and "specifically included those factual allegations in their initial and amended complaints." *Id.* at 9. Defendants dispute Plaintiffs' assertion that deposition scheduling difficulties stymied earlier discovery of the alleged new evidence. *Id.* For example, they point out Plaintiffs' initially requested a fast track for discovery. *Id.* Defendants also note the futility of the proposed voyeurism claim against Meghan De Los Reyes due to unwaived immunity under the New Mexico Tort Claims Act. *Id.* at 10.

Defendants also argue that the proposed amendment would cause undue delay and undue prejudice under Rule 15, primarily because of their lost opportunity to seek a meaningful stay of litigation under qualified immunity at this late stage. *Id.* at 10. They argue "it is well settled" in this circuit that leave to amend may be denied based solely on untimeliness "especially when the party filing the motion has no adequate reason for the delay." *Id.* (citing *Bugg v. Benson*, 2023 WL 6609304, at *1 (D. Utah Oct. 10, 2023)). Because Plaintiffs could have asserted the new claims in previous complaints, Defendants decry Plaintiffs' assertion of "logistical and scheduling delays" precluding earlier amendment as "disingenuous." *Id.*

Weir and Meghan de los Reyes argue undue prejudice stems from permitting amendment now since they "would have raised the affirmative defense of qualified immunity and would have

3

pursued dispositive motions and a stay of discovery" had Plaintiffs timely pled federal constitutional claims. *Id.* at 12. They say Plaintiffs have obviated a properly raised qualified immunity defense by "conveniently waiting until after both [Paul Weir and Meghan de los Reyes] have been deposed" and answered written discovery. *Id.* Defendants warn of significant case delay and prejudice because the "scope of the case and the discovery process" would expand with new "complex federal constitutional claims," particularly for the Fourteenth Amendment equal protection claim which adds "substantially different factual issues" to those already litigated. *Id.*

Turning to the substance of the claims, Defendants emphasize the lack of any meaningful differences between Plaintiffs' earlier pleadings and the proposed amendment as it relates to the critical issue of when sexual assault reports reached Defendant Weir. *Id.* at 13. They contend circumstances show Plaintiffs waited to add federal constitutional claims until Weir and Meghan de los Reyes could "no longer avail themselves" of qualified immunity. *Id.* In sum, Defendants remind that the proposed claims are not novel but "based upon allegations of sexual assault and abuse by Glen de los Reyes while Plaintiffs were ENMU students, based upon allegations of gender discrimination, and based upon alleged retaliation for reporting the abuse." *Id.* (citing the Proposed Second Amended Complaint).

    3. <u>Plaintiffs' reply.</u>

Plaintiffs do not deny that the proposed amendments "largely track" the operative complaint but argue as a result the amendments "do[] not inject novel theories" or change the central disputes. [Doc. 150, at 2]. They believe recent depositions have made pleading federal constitutional claims more "viable" now than at the initial pleading stage. *Id.* at 3. In this regard, they say crucial information concerning the extent and timing of Defendant Weir's knowledge was

"uniquely available to Defendants," and by implication, only discoverable after depositions. *Id.* at 3, 4. In Plaintiffs' view, Defendants essentially prevented Plaintiffs' discovery of key facts and thus prevent Plaintiffs from timely amendment. *Id.* at 4.

Plaintiffs say they satisfy the Rule 16 good-cause standard for a scheduling order extension several ways. *Id.* at 4, 5. First, in retrospect, the six weeks between entry of the scheduling order and the pleading amendment deadline was insufficient to timely develop and file the federal constitutional claims. *Id.* at 4, 5. Second, timely deposition scheduling was beyond their control. *Id.* at 5. Third, deposition testimony "supports" the proposed claims and "differs materially" from deposition testimony of Weir and Meghan de los Reyes obtained back in 2023. *Id.* Plaintiffs says this shows diligence in discovery and thus good cause under Rule 16. *Id.*

Plaintiffs also assert the proposed amendments are neither futile nor unduly prejudicial. Regarding prejudice, Plaintiffs say the added claims place "no substantially greater burden" on Weir or Meghan de los Reyes. *Id.* at 9. They reason any prejudice is mitigated because Defendants may still raise qualified immunity notwithstanding the amendment, noting that Defendants did not move to dismiss the "identical" pending claims. *Id.* at 9. Regarding futility, Plaintiffs say they prevail because the standard permits amendment "unless a defendant clearly shows [] implausibility" meaning that the amended claim "fails on its face." *Id.* at 9.

## II.     LEGAL STANDARDS

### A.     Rule 16(b)(4) Governs Extension of Scheduling Order Deadlines.

Scheduling order modification requires good cause and the judge's consent. Fed. R. Civ. P. 16(b)(4). The movant must show that "the scheduling order deadlines cannot be met despite the movant's diligent efforts." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230,

1240 (10th Cir. 2014). This requires the movant to "provide an adequate explanation for any delay," *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1214 n.4 (10th Cir. 2006), such as when the movant "learns new information through discovery or the underlying law has changed," *Gorsuch*, 771 F.3d at 1240. Critically, no adequate explanation exists where "the movant knew of the underlying conduct but simply failed to raise [its] claims." *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018) (bracket in original). The district court is tasked with using its discretion to make such a determination. *Gorsuch*, 771 F.3d at 1240.

    **B.**    **Rule 15(a)(2) Governs When Amendment is Proper.**

"A party may amend its pleading only with the opposing party's written consent or the court's leave" and directs the court to "freely give leave when justice so requires." Fed R. Civ. P. 15(a)(2). Rule 15 intends to provide parties with "maximum opportunity for each claim to be decided on the merits" instead of "procedural niceties." *Minter*, 451 F.3d at 1204. While courts generally favor granting leave to amend, permission may be denied in the case of undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, futility of amendment, or failure to cure prior deficiencies. *Id.*; *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). The district court enjoys discretion to make this call. *Minter*, 451 F.3d at 1204.

## III. ANALYSIS

    **A.**    **I Recommend the Court Deny Plaintiffs' Motion for Leave to Amend Because Plaintiffs Fail to Establish Good Cause to Extend the Pleading Amendment Deadline.**

    1.  <u>Relevant law.</u>

Protracted delay "is itself a sufficient reason" to deny leave to amend. *Minter*, 451 F.3d at 1205. "At some point, delay will become undue, placing an unwarranted burden on the court or

will become prejudicial, placing an unfair burden on the opposing party." *Id.* (quoting *USX Corp v. Barnhart*, 395 F.3d 161, 167 (3rd Cir. 2004)). The Tenth Circuit places primacy on the reason for delay: a district court does not abuse its discretion by denying amendment "when the party filing the motion has no adequate explanation for the delay." *Id.* (collecting Tenth Circuit cases). Courts may also deny leave to amend when "the moving party was aware of the facts on which the amendment was based for some time prior to filing the motion to amend." *Id.*; *see also Husky Ventures*, 911 F.3d at 1020; *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994).

2. Application.

Plaintiffs argue good cause exists based on discovery of new information underpinning the proposed amendments. However, the complaints and proffered evidence show otherwise. As early as May, 2023, Plaintiffs knew when Defendant Weir first heard about Glen de Los Reyes' alleged abuse: "at least two trainers reported the abuse to Defendant Weir *in February 2022*." [Doc. 12, at 6] (First Amended Complaint) (emphasis added). Plaintiffs' proposed second amended complaint reduces precision and moves the critical date at least three weeks later: "at least two trainers reported the abuse to Defendant Weir in the *spring of 2022*." [Doc. 130-1, at 10] (emphasis added). In context, this is a distinction without a difference. Otherwise, the two complaints mirror the timing of allegations against Weir: those concerning Jane Doe 3's abuse in September and October 2022, *compare* [Doc 12, at 9, 10], *with* [Doc. 130-1, at 14, 15]; and that athletic trainers reported Jane Doe 1 and 2's suspicious bruising to Defendant Weir in October 2022. *Compare* [Doc. 12, at 13, 14], *with* [Doc. 130-1, at 19, 20].

The deposition excerpts do not present a different timeline from that originally pled. Defendant Weir testified that he received reports of Glen do los Reyes' treatments as a medical

7

liability issue during the spring of 2022. [Doc 130-2, at 3]. Athletic trainer Danielle Torossi testified that she reported sexual assault to Weir during that time. [Doc. 130-3, at 4]. But Weir denied that Torossi specifically reported an allegation of inappropriate touching to him in the spring of 2022 [Doc. 130-2, at 4]. The conflicting accounts of when and from whom Weir first learned of the alleged abuse present a factual dispute for the jury to assess. They do not, however, materially change the allegation against Weir, *i.e.*, what did he know and when did he know it? The only new inference from the deposition excerpts is that Weir may (or may not) have become aware of relevant allegations in "spring" rather than "February."

Plaintiffs had the relevant allegations underpinning their proposed federal constitutional claims—the suspicious nature of Glen de los Reyes' treatments, Weir's alleged knowledge of same, and potential gender discrimination—when they asserted state law and Title IX claims based on the same facts. Plaintiffs therefore have no adequate explanation for the delay. I propose finding there is not good cause for granting leave and recommend denying the motion.

> **B.    Alternatively, I recommend the Court Deny Plaintiffs' Motion for Leave to Amend Because the Proposed Amendments Show Undue Delay and Would Be Unduly Prejudicial to Defendants.**

  1. <u>Relevant law.</u>

Similar to the test for altering a scheduling order, a court may properly deny amendment under Rule 15(a) if a plaintiff does not supply an adequate explanation for bringing new claims in a timely fashion. *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006). The court's primary focus is thus the reason for delay. *Minter*, 451 F.3d at 1206. If a plaintiff requesting amendment could have included the proposed facts or claims in the original pleading or subsequent amendments but failed to do so, denial of leave to amend is appropriate. *Riggs v. Baca*, No. 18-cv-

8

00485, 2019 WL 6877558, at *3 (D.N.M. Dec. 17, 2019) (citing *Pallotino*, 31 F.3d at 1027) (affirming the denial of leave to amend where the proposed amendment was not based on new evidence unavailable at the time of the original filing)). Denial is moreover appropriate when it appears "that the plaintiff is using Rule 15 to make the complaint a moving target." *Minter*, 451 F.3d at 1206. In sum, the liberal amendment spirit of Rule 15(a) does not ignore bedrock principles of efficient and thoughtful pleading practice.

    2. <u>Application.</u>

        i. *Undue delay counsels against granting leave to amend.*

The alleged conduct upon which Plaintiffs base their proposed federal constitutional claims for substantive due process, equal protection, and retaliation is the same upon which Plaintiffs based their original state law claims for negligence, sexual battery, sex and gender discrimination, retaliation, substantive due process, invasion of privacy, and Title IX discrimination. [Doc. 12]. The focus of the analysis is the reason for delay in seeking an amendment. As discussed above, Plaintiffs assert the proposed claims were not ripe for earlier pleadings because deposition testimony was necessary to make them actionable. That assertion is unconvincing because the factual basis of the new claims is not materially advanced by the new information: while a witness is now on record that she made a report of inappropriate sexual touching to defendant Weir, Weir himself is now on record that she did not. Regardless of that new dispute of fact, Plaintiffs relied in their original complaint on information in their possession that such a report was made. The Court is not persuaded that the proposed new claims could not have been brought in either of the previous complaints. Effectively, Plaintiffs' change in strategy arrives too late in the litigation.

Plaintiffs urge that any delay in their late motion to amend is mitigated by the fact the suit has already been delayed for several other reasons. But previous delays do not make the next delay less burdensome to parties under Rule 15(a). If anything, the opposite is true. The bottom line is Plaintiffs' reason for delay is insufficient given the preexisting foundational factual basis and thus I recommend the Court deny leave to amend due to undue delay,

> ii. *Undue prejudice justifies denying leave to amend.*

Undue prejudice is the "most important" factor in the pleading amendment analysis. *Minter*, 451 F.3d at 1208. "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment," chiefly where new subject matter and new facts belie the proposed amendments. *Id.* (internal citation omitted). Although the proposed second amended complaint does not arise from a separate factual basis as discussed above, allowing new federal constitutional claims after substantial discovery has occurred unfairly affects Defendants' ability to adequately prepare a defense. Namely, any colorable qualified immunity defense Defendants could mount would essentially be toothless because the burdens of litigation and discovery are ongoing.

Qualified immunity is not only a liability defense but a protection from the burdens of litigation until the resolution of dispositive motions. *See Pearson v. Callahan*, 555 U.S. 223, 237 (2009); *Workman v. Jordan*, 958 F.2d 332, 226 (10th Cir. 1992). This protection is now substantially lost to Weir and Meghan de los Reyes, who have already been deposed. That loss is particularly onerous to Weir, whose testimony provides the liability hook for the institution. Moreover, qualified immunity requires a distinct procedural and analytical process from the defenses available on Plaintiffs' state law claims. Forcing Defendants to mount a qualified

immunity defense after stripping the protections of that immunity is unduly prejudicial to Defendants. I therefore recommend the Court deny leave to amend based on undue prejudice.

    iii.  *No private right of action for voyeurism.*

Plaintiffs' proposed complaint amends a claim for damages for invasion of privacy against Glen de los Reyes and Meghan de los Reyes,' [Doc. 47, p. 27], to blend in a claim for "voyeurism," newly citing as authority the Restatement (Second) of Torts, § 652B and NMSA 1978, § 30-9-20. The latter is a statute creating a New Mexico crime where none existed before. Otherwise, Plaintiffs say nothing at all about voyeurism, neither in the proposed amended complaint nor in the motion whose purpose is to demonstrate the basis for the amendment.

Plaintiffs do not establish, nor can the Court, that New Mexico has recognized a private right of action for voyeurism. The New Mexico criminal statute cited has no language suggesting that intent by the New Mexico Legislature. Nor does the Restatement support an argument for creation of a cause of action under that label. The United States District Court for the District of New Mexico has relied upon the Restatement to define the contours of a subcategory of New Mexico's tort of invasion of privacy: false light, intrusion, publication of private fact, and right of publicity or appropriation. *New Mexico ex rel Balderas v. Tiny Lab Productions*, 457 F.Supp.3d 1103, 1123 (D.N.M. 2020) (citing *Moore v. Sun Pub. Corp.*, 118 N.M. 375, 382-83, 881 P.2d 735, 742-43 (Ct.App. 1994)). In sum, a separate tort of "voyeurism" is not indicated by the criminal statute, by New Mexico precedent, by the Restatement, nor by federal precedent or practice in this District.

In the absence of any discussion by Plaintiffs, the Court is unable to conclude that New Mexico law recognizes a tort by the name of "voyeurism," nor that it is shorthand for a recognized form of invasion of privacy (and, if so, why the recognized description should not be preferred). *See Moore*, 881 P.2d at 742–43. Without first resolving those questions, the Court cannot determine whether Plaintiffs have properly pled waiver of sovereign immunity that would allow the claim against Meghan de los Reyes. *See* [Doc. 136, p. 10].

## IV.  CONCLUSION

For the foregoing reasons, I **RECOMMEND** Plaintiffs' Motion for Leave to File Second Amended Complaint [Doc. 130] be **DENIED** for lack of good cause to modify the scheduling order under Rule 16(b)(4) and for undue delay and undue prejudice under the Rule 15(a) standards.

**IT IS SO ORDERED.**

The Honorable Jerry H. Ritter
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

Case 2:23-cv-00362-GBW-JHR    Document 300    Filed 03/07/25    Page 13 of 13