IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JANE DOE 1, *et al.*,

    Plaintiffs,

v.                                                                                                      Civ. No. 23-362 GBW/JHR

EASTERN NEW MEXICO UNIVERSITY
BOARD OF REGENTS, *et al.*,

    Defendants,

and

FOREMOST INSURANCE COMPANY
GRAND RAPIDS, MICHIGAN,

    Plaintiff-in-Intervention,

v.

MEGHAN DE LOS REYES, *et al.*,

    Defendants-in-Intervention,

and

JANE DOE 1, *et al.*,

    Involuntary Defendants-in-Intervention.

## ORDER GRANTING PLAINTIFF IN INTERVENTION FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Plaintiff-in-Intervention Foremost

Insurance Company, Grand Rapids, Michigan's Motion for Summary Judgment. *Doc.*

1

*165*. Having considered the Motion, the attendant briefing (*docs. 189, 198, 214*), and the parties' oral arguments (*doc. 296*), the Court GRANTS the Motion.

I.   **BACKGROUND**

Plaintiffs/Defendants-in-Intervention Jane Doe 1, Jane Doe 2, and Jane Doe 3 (collectively, "Plaintiffs") bring a variety of state and federal claims against the Eastern New Mexico University Board of Regents ("ENMUBOR"), Glen de los Reyes, Meghan de los Reyes, Paul Weir, and Glen's Fitness Lab, LLC. *Doc. 47* ¶¶ 108-74. These claims are based on sexual abuse that Glen de los Reyes inflicted on Plaintiffs while they were student-athletes at Eastern New Mexico University ("ENMU"). *See generally id*. Relevant here are Plaintiffs claims against Defendants Meghan and Glen de los Reyes (collectively, "the de los Reyeses"). Plaintiffs bring claims against the de los Reyeses for negligence and invasion of privacy. *Id*. at ¶¶ 108-114, 151-60. However, Plaintiffs have acknowledged that the record lacks support for their invasion of privacy claim against the de los Reyeses, rendering it irrelevant here. *See doc. 215* at 20; *doc. 296* at 9. Plaintiffs also bring a claim against Defendant Glen de los Reyes ("Glen") for sexual battery. *Id*. ¶¶ 115-20.

During the time period relevant to Plaintiffs' claims, the de los Reyeses were insured by Foremost Insurance Company Grand Rapids, Michigan ("Foremost") under a homeowners policy including personal liability coverage. *See doc. 165* at 5; *doc. 189* at 2-3; *doc. 198* at 1; *doc. 214* at 6. On October 27, 2023, Foremost filed a Complaint in

Intervention for Declaratory Rights Under a Policy of Insurance requesting the Court to declare that Foremost has no duty to defend or indemnify the de los Reyeses for the claims brought against them in the underlying litigation by Plaintiffs. *See doc. 66*. Foremost filed the instant Motion for Summary Judgment on August 9, 2024, requesting summary judgment on its Complaint in Intervention. *Doc. 165*. Plaintiffs filed their response on August 30, 2024, *doc. 189*, and Defendant Meghan de los Reyes ("Meghan") filed her response on September 9, 2024, *doc. 198*.[1] Defendant Glen never filed a response.[2] Briefing on the Motion was complete on September 27, 2024, *doc. 248*, with the filing of Foremost's reply, *doc. 214*.

## II.   LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] 'that there is an absence of evidence to support the nonmoving party's

---

[1] The Court originally struck Defendant Meghan's response pursuant to D.N.M.LR-Civ. 83.5 because she was represented by an attorney. *See* D.N.M.LR-Civ. 83.5 ("A party who is represented by an attorney may not personally make any filings, other than a notice of appeal, or represent himself or herself unless otherwise ordered."). However, Defendant Meghan is now proceeding *pro se* in the instant declaratory judgment action. *See docs. 286, 297*. Accordingly, the Court has considered her response in reaching its determination for this Order.

[2] Despite Foremost's indication that it received a response from Defendant Glen, *see doc. 214* at 3, he never filed one on the record. Foremost notes that Defendant Glen's response is "virtually identical" to Defendant Meghan's, and he has not disputed that characterization. *See id*.

case.'" *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the movant meets this burden, the non-moving party is required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324.

The court's role is not to weigh the evidence or determine credibility, but rather merely to assess whether a genuine issue exists as to material facts requiring a trial. *See Anderson*, 477 U.S. at 249, 255. "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257. Furthermore, the court must resolve reasonable inferences and doubts in favor of the non-moving party, and construe evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 551-54 (1999). However, "viewing the evidence in the light most favorable to the nonmovant, it is not enough that the evidence be merely colorable or anything short of significantly probative." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (internal quotations omitted); *see also Anaya v. CBS Broad. Inc.*, 626 F. Supp. 2d 1158, 1197 (D.N.M. May 29, 2009) ("The mere existence of a scintilla of evidence will not avoid summary judgment."). As with any fact asserted by a party in a summary judgment motion, the nonmovant must point the Court to such support by "citing to particular parts of materials in the record." Fed. R.

Civ. P. 56(c)(1)(A). Further, all material facts set forth in the motion and response which are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

### B. Construction of Insurance Contracts

A federal court sitting in diversity must apply the substantive law of the forum state. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). As "[t]he interpretation of an insurance contract is governed by state law," the Court will apply New Mexico law in interpreting the language of the insurance policy. *See Houston Gen. Ins. Co. v. Am. Fence Co.*, 115 F.3d 805, 806 (10th Cir. 1997).

#### i. General Rules of Construction

Under New Mexico law, the Court must determine the obligations of an insurer by reference to the terms of the insurance policy at issue. *Knowles v. United Servs. Auto. Ass'n*, 832 P.2d 394, 396 (N.M. 1992). In so doing, the Court "begin[s] with the plain language of the insurance agreement itself." *Union Standard Ins. Co. v. Hobbs Rental Corp.*, 566 F.3d 950, 952 (10th Cir. 2009) (citing *Rummel v. Lexington Ins. Co.*, 945 P.2d 970, 976 (N.M. 1997)). "When a policy contains clear and unambiguous language, the duty of the reviewing court is to enforce that language as written as an expression of the intent of the parties." *City of Santa Rosa v. Twin City Fire Ins. Co.*, 143 P.3d 196, 198 (N.M. Ct. App. 2006). When evaluating competing interpretations of a policy, the Court must ask "what understanding a reasonably intelligent, non-lawyer lay person might glean from the policy, in light of the usual meaning of the words and the circumstances

5

leading to purchase of the policy." *Berry v. Fed. Kemper Life Assur. Co.*, 99 P.3d 1166, 1183 (N.M. Ct. App. 2004). "Finally, while we construe insurance contract ambiguities in favor of the insured, a favored interpretation cannot lead to strained interpretations of the policy language." *Hobbs*, 566 F.3d at 952 (citing *Battishill v. Farmers All. Ins. Co.*, 127 P.3d 1111, 1115 (N.M. 2006)).

> ii.     *Duties to Defend and Indemnify*

Under New Mexico Law, an insurer's duties to defend and to indemnify are distinct. *Found. Rsrv. Ins. Co. v. Mullenix*, 642 P.2d 604, 605 (N.M. 1982) (citing *Am. Emp.'s Ins. Co. v. Cont'l Cas. Co.*, 512 P.2d 674, 676 (N.M. 1973)). "The duty to defend is broader than the duty to indemnify." *Valley Imp. Ass'n, Inc. v. U.S. Fid. & Guar. Corp.*, 129 F.3d 1108, 1116 (10th Cir. 1997). An insurer has a duty to defend claims against its insured if "the language of a complaint states a claim that falls within the terms of the contract." *City of Albuquerque v. BPLW Architects & Engineers, Inc.*, 213 P.3d 1146, 1151 (N.M. Ct. App. 2009). Known but unpleaded facts may bring a claim within the coverage of the policy at the beginning of the litigation or at a later stage. *Miller v. Triad Adoption & Counseling Serv., Inc.*, 65 P.3d 1099, 1103 (N.M. Ct. App 2003). While a duty to defend "arises out of the nature of the allegations in the complaint . . . the 'duty to indemnify relates to liability actually imposed on the insured for claims falling within the scope of coverage.'" *Hartford Fire Ins. Co. v. Gandy Dancer, LLC*, 864 F. Supp. 2d 1157, 1193-94 (D.N.M. Mar. 28, 2012) (quoting *Mount Vernon Fire Ins. Co. v. Okmulgee Inn*

*Venture, LLC*, 451 F. App'x 745, 749 (10th Cir. 2011) (unpublished)). Accordingly, "[i]f the allegations of the . . . complaint clearly fall outside the provisions of [the insurance contract], indemnity by the insurer is not required." *N.M. Physicians Mut. Liab. Co. v. LaMure*, 860 P.2d 734, 737 (N.M. 1993).

### iii.   *Exclusionary Clauses*

New Mexico law recognizes that "[t]he parties to an insurance contract may validly agree to extend or limit insurance liability risks as they see fit." *Safeco Ins. Co. of Am. v. McKenna*, 565 P.2d 1033, 1036 (N.M. 1977). Because insurance contracts are contracts of adhesion, "[e]xclusionary clauses in insurance policies are to be narrowly construed, with the reasonable expectations of the insured providing the basis" for the analysis. *Knowles*, 832 P.2d at 396 (citation omitted). "In determining the applicability of [a policy] exclusion, the focus must be on the *origin* of the damages, *not* the *legal theory* asserted for recovery." *Lopez v. N.M. Pub. Sch. Ins. Auth.*, 870 P.2d 745, 747 (N.M. 1994) (citations omitted).

## III.   UNDISPUTED MATERIAL FACTS (UMFs)

Based on the record before it, the Court finds the following facts below material and without genuine dispute. In addition, for purposes of an action for declaratory judgment challenging the existence of an insurer's duty to defend, the material facts are constituted by what is alleged in the relevant pleading and the language of the policy at issue. Therefore, for certain of the following UMFs, the Court has cited to the Plaintiffs'

First Amended Complaint for Damages and Jury Demand ("Complaint") directly rather than to the parties' statements of undisputed material facts in their briefing. In so doing, the Court bears in mind that Plaintiffs' allegations remain unproven for the purposes of this Order.

1. Plaintiffs were enrolled as students at ENMU during the 2022-2023 academic year and were members of the University's women's basketball team under the leadership of Head Coach Meghan. Plaintiffs' Undisputed Material Fact ("PUMF") G, H.

2. The term "Underlying Lawsuit" refers to Plaintiffs' First Amended Complaint for Damages and Jury Demand and Motion for Leave for Plaintiffs to Proceed Under Pseudonym (*doc. 47*) filed on August 23, 2023, in the case entitled *Doe 1, et al. v. Eastern New Mexico Board of Regents, at al.*, Case No. 2:23-cv-00362-GBW-JHR, in the United States District Court for the District of New Mexico.

3. In the Underlying Lawsuit, Plaintiffs bring claims against Defendant Meghan for negligence and invasion of privacy. *Doc. 47* ¶¶ 108-114, 151-60.

4. In the Underlying Lawsuit, Plaintiffs bring claims against Defendant Glen for negligence, sexual battery, and invasion of privacy. *Doc. 47* ¶¶ 108-20, 151-60.

5. In the Underlying Lawsuit, Plaintiffs allege that Defendant Meghan required Plaintiffs to be seen and treated for physical therapy and athletic trainer-type work by her husband, Defendant Glen. *Doc. 47* ¶¶ 12, 15.

6. In the Underlying Lawsuit, Plaintiffs allege that Defendant Glen committed sexual assault against them during the course of their treatments. *Doc. 47*. ¶¶ 45, 54, 63, 65, 69.

7. In the Underlying Lawsuit, Plaintiff Jane Doe 1 alleges that during one of her treatments with Defendant Glen, he "painfully grop[ed] her vagina and breasts while grunting and moaning." *Doc. 47* ¶ 54.

8. In the Underlying Lawsuit, Plaintiff Jane Doe 2 alleges that during one of her treatments with Defendant Glen, he "groped her groin, including her vagina" and "laid down on top of [her], pinning her, his chest to her back and jamming his penis between her buttocks while fondling her breasts, before releasing her." *Doc. 47* ¶ 63.

9. In the Underlying Lawsuit, Plaintiff Jane Doe 3 alleges that during her only treatment with Defendant Glen, he "rubbered her vagina and breasts, and then painfully jabbed at her vagina with his thumb, all while grunting and moaning." *Doc. 47* ¶ 45.

10. In the Underlying Lawsuit, Plaintiffs allege that Defendant Meghan "knew or should have known that Glen [] was assaulting female ENMU students, including her own players, and conspired with him to perpetuate his assaults and harassment on her players." *Doc. 47* ¶ 23.

11. In the Underlying Lawsuit, Plaintiffs allege as a result of Defendants Glen and Meghan's negligence, they "have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, severe anxiety, depression, feelings of self-blame, hypervigilance, a lost sense of trust, a sense of being tainted, and relationship an intimacy issues[.]" *Doc. 47* ¶ 114.

12. In the Underlying Lawsuit, Plaintiffs allege that Defendant Meghan retaliated against them when they sought to avoid or objected to Defendant Glen's sexual assaults. *Doc. 47* ¶¶ 22, 23, 24, 49-52, 64, 68, 70, 72, 86, 88-91, 103.

13. Plaintiff-in-Intervention Foremost issued a homeowner's insurance policy ("Foremost Policy" or "Policy") to Defendant Meghan in September 2021. PUMF C.

14. The Foremost Policy's first coverage period extended from September 21, 2021, to September 21, 2022, and the second coverage period extended from September 21, 2022, to September 21, 2023. PUMF D.

15. The Policy defines insured to include both Defendants Glen and Meghan. PUMF F.

16. Coverage F of the Foremost Policy provides personal liability coverage for an insured according to the following terms:

> If a claim is made or a suit is brought against you for damages because of **bodily injury** or **property damage**, caused by an accident that occurs during the Policy Period shown on the Declarations Page to which this coverage applies, we will:
> 1. Pay up to the Limit of Liability shown on the Declarations Page for the compensatory damages for which you are legally liable.
> 2. Provide a defense at our expense by attorneys of our choice.
>
> Continuous or repeated exposure to substantially the same or general harmful conditions, whether occurring during one policy period or occurring over more than one policy period, constitutes one accident.
>
> We do not provide coverage for punitive or exemplary damages regardless of whether they are determined to arise from **bodily injury** or **property damage** to which this coverage applies.
>
> We may make any investigations and settle any claims or suits that we decide appropriate. Our obligation to defend any claim or suit ends when the amount we pay in settlement or judgment for damage resulting from the accident equals the available Limit of Liability shown on the Declarations Page subject to the Aggregate Limit.
>
> If a claim is made or a suit is brought against any of you by any other person or organization for indemnity, reimbursement, or contribution toward

damages for **bodily injury** or **property damage**, which is excluded by this policy, we will not provide coverage or defense for that claim or suit.

*Doc. 66* at 27 (bold in original).

17. Under the Foremost Policy, **bodily injury** means only physical 1. Injury; 2. Sickness; 3. Disease; or 4. Death; caused by an accident or sustained by any person except any of [the persons named on the Declarations Page]. Under the Foremost Policy, **bodily injury** does not mean physical injury, sickness, disease, or death caused by or a result of: 1. **Pollutants**; or 2. Any actual, alleged, or threatened: a. Sexual act or molestation; b. Corporal punishment; c. Physical or mental abuse; or d. Transmission of or exposure to communicable disease. *Doc. 66* at 22 (bold in original).

18. Pursuant to an exclusion applicable to Coverage F, the Foremost Policy states that Foremost "will not pay for bodily injury. . . [a]rising out of any a. Sexual act; b. Molestation; c. Corporal punishment; or d. Physical or mental abuse." *Doc. 66* at 29, 31.

19. Pursuant to an exclusion applicable to Coverage F, the Foremost Policy states that Foremost "will not pay for bodily injury . . . [r]esulting from any act or omission that is intended by any of you to cause any harm or that any of you could reasonably expect to cause harm." *Doc. 66* at 29.

IV. **ANALYSIS**

Foremost seeks a declaration that it has no contractual obligation under the Foremost Policy to defend or indemnify the de los Reyeses. *See doc. 66.* Foremost asserts multiple grounds for this declaration: (1) Plaintiffs' complaint fails to allege an accident, (2) Plaintiffs' complaint does not allege bodily injury as defined by the Foremost Policy, and (3) various policy exclusions—including exclusions for bodily

11

injury arising from sexual molestation or intentional acts which could reasonably expect to cause harm—preclude coverage. *See doc. 165* at 11-19. The Court finds that Foremost is entitled to summary judgment on its request for declaratory relief, as the Foremost Policy's definition of bodily injury, the exclusion of bodily injury arising from sexual molestation, and the intentional acts exclusion negate any duty to defend the de los Reyeses. Accordingly, the Court does not address Foremost's arguments regarding whether Plaintiffs allege an accident or the applicability of other exclusions.

### A. Determining the Origin of the Damages Claimed in Plaintiffs' Complaint

"In determining the applicability of [a policy] exclusion, the focus must be on the *origin* of the damages, *not* the *legal theory* asserted for recovery." *Lopez*, 870 P.2d at 747. Because the duty to defend is determined by the nature of the allegations, the Court turns to the language of the Complaint.[3] *See doc. 47* (Plaintiffs' First Amended Complaint for Damages and Jury Demand and Motion for Leave for Plaintiffs to Proceed Under Pseudonym). To discern the origin of the claimed damages, the Court

---

[3] The Court recognizes, as quoted above, that known but unpleaded facts can bring a claim within coverage. However, in the instant case, it cannot be reasonably said that Plaintiffs' claims may expand further than currently presented. With respect to the negligence claims against Defendants Glen and Meghan, Plaintiffs have not sought to materially amend them in the 23 months since the initial complaint was filed. In fact, even the Plaintiffs' attempt to file a Second Amended Complaint did not materially alter the allegations as they relate to this motion. *See doc. 130*. Furthermore, for the same reasons as Judge Ritter recommended and this Court adopted denying that attempt, any amendments to alter the negligence claims would be untimely and rejected. *See docs. 300, 305*.

must first identify the precise nature of Plaintiffs' claims against Defendants Glen and Meghan.

      A review of the Complaint clearly establishes that the claims against Defendant Glen are based upon the allegations of his sexual harassment and assaults of Plaintiffs. This conclusion is particularly obvious with respect to Count II which alleges sexual battery by Defendant Glen. *See id.* ¶¶ 115-120. Yet, it is equally true with respect to the negligence claim against him in Count I. Simply looking at the paragraphs of Count I, it is challenging to find any negligence claim against Defendant Glen. *See id.* ¶¶ 108-114. Aside from the general incorporation paragraph, Defendant ENMUBOR is the only actor in those paragraphs. *Id*. Putting aside the failure to tie factual allegations to the negligence claim against Defendant Glen, the allegations against Defendant ENMUBOR repeatedly refer to the sexual assault and abuse by him. *See id.* ¶ 109 ("Prior to the sexual assaults perpetrated against Plaintiffs . . ."); ¶ 111 (". . . failing to inform [appropriate persons] that Glen [d]e [l]os Reyes was sexually abusing students . . ."); ¶ 112 ("By ignoring Glen [d]e [l]os Reyes' propensity for sexual assault and abuse . . .). Moreover, the factual allegations incorporated by paragraph 108 repeatedly allege that he "sexually harassed" and "abused and sexually assaulted" the players. *See id.* ¶¶ 14, 19, 23, 27, 45, 54, 63, 65, 69, 91, 109. Indeed, there is no non-sexual misconduct, negligent or otherwise, that is alleged to have caused Plaintiffs harm at the hands of Defendant Glen.

Plaintiffs now argue that their negligence claim includes a claim related to his treatment of them which is separate from the sexual abuse. *See doc. 189* at 16-17; *doc. 296* at 2. In this telling, Count I can be read to include a claim that Defendant Glen's therapy sessions were below the applicable standard of care even ignoring the sexual assaults, and the Plaintiffs were harmed by this substandard treatment. However, the language of the Complaint does not remotely support this interpretation. In fact, the Complaint makes abundantly clear that they are alleging that the "treatment" performed by Defendant Glen was a mere ruse for creating opportunities to sexual assault them. As they state in the introductory paragraph, "[b]ut rather than providing actual physical therapy or training to Plaintiffs, Glen De Los Reyes sexually assaulted them." *Doc. 47* at 1. Plaintiffs emphasize this contention by referring to Defendant Glen's "treatment" with quotations throughout the Complaint. *See id.* ¶¶ 14, 20, 39, 40, 43, 46, 55, 64, 71. Nowhere does the Complaint hint at an allegation about a standard of care which could point to a negligent treatment claim not premised on the sexual assaults. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that Rule 8 requires a complaint to provide defendants with "fair notice of what the . . . claim is and the grounds upon which it rests."). Plaintiffs argue that they allege physical injuries from Defendant Glen's negligent therapy, specifically bruising.[4] *See doc. 189* at 16-17.

---

[4] Plaintiffs also argue they allege the exacerbation of preexisting injuries resulting from Defendant Glen's treatment. However, the Complaint is devoid of any such allegation.

However, fairly read, the Complaint does not allege bruising from negligent treatment. Instead, the Complaint only mentions bruises as something observed by a school trainer who then concluded that the athlete had been receiving treatment outside of the training room and likely by Defendant Glen. *See doc. 47* ¶¶ 74-77. It does not indicate in any way that Plaintiffs were themselves asserting the bruising as a claimed injury. More importantly, they do not tie those bruises to the negligent performance of medical treatment or therapy.

Consequently, both claims against Defendant Glen allege only injuries arising from sexual assault, harassment and abuse.

This conclusion also applies to at least a portion of the negligence claim against Defendant Meghan. As with Defendant Glen, the precise negligence claim brought against Defendant Meghan is difficult to discern. Aside from the general incorporation paragraph, Plaintiffs point to no facts supporting or explaining the negligence claim against her. *See id.* ¶¶ 108-114. Nonetheless, the Court finds two separate theories of liability directed at Defendant Meghan. The first is summarized in paragraph 23 which alleges that "Coach De Los Reyes knew or should have known that Glen De Los Reyes was assaulting female ENMU students, including her own players, and conspired with him to perpetrate his assaults and harassment on her players." *Id.* ¶ 23. This theory of liability, therefore, alleges that Defendant Meghan was a joint tortfeasor in the sexual

15

assaults of Plaintiffs by Defendant Glen.  As with Defendant Glen, all injuries alleged under this theory of liability arise from sexual assault, harassment and abuse.

The second theory of liability sufficiently pled in the Complaint is a claim that Defendant Meghan retaliated against Plaintiffs when they sought to avoid or objected to Defendant Glen's sexual assaults.  *See id.* ¶¶ 22, 23, 24, 49-52, 64, 68, 70, 72, 86, 88-91, 103.  To be sure, much of the injuries which are alleged in connection with these paragraphs would also arise from the ongoing sexual assaults which are alleged. However, some of the alleged damages would be independent of the sexual assaults. For example, any loss of playing time or other team-related punishment would be separate.  Further, the emotional distress of having your coach conspire with another to facilitate his sexual assault of you could certainly cause harm above and beyond the sexual assault itself.  Therefore, the Court cannot conclude that all the injuries alleged under this second theory of liability arise from sexual assault, harassment and abuse.

### B. For the Alleged Injuries Which Arise from Sexual Assault, Harassment and Abuse, They Are Not Covered Under the Foremost Policy

The Foremost Policy covers "bodily injury"[5] which **"**means only physical 1. Injury; 2. Sickness; 3. Disease; or 4. Death; caused by an accident or sustained by any person . . ."  UMF 17.  However, the policy then excludes from this definition "physical injury, sickness, disease, or death caused by or a result of: 1. Pollutants; or 2. Any actual,

---

[5] The Policy also covers "property damage" which, of course, is not relevant here.  UMF 16.

16

alleged, or threatened: a. Sexual act or molestation; b. Corporal punishment; c. Physical or mental abuse; or d. Transmission of or exposure to communicable disease. *Id.* Later, in its Exclusions Section, the Policy states it "will not pay for bodily injury . . . [a]rising out of any a. Sexual act; b. Molestation; c. Corporal punishment; or d. Physical or mental abuse." UMF 18. Consequently, whether by definition or exclusion, any injury caused by, or a result of, or arising from a sexual act or molestation is not covered by the Policy.

The Policy does not define "sexual molestation." However, Foremost has presented a reasonable and supported definition in its briefing, and Plaintiffs have not disputed it. *See doc. 165* at 15-16 (citing to and quoting *Farmers Union Mut. Ins. v. Kienenberger*, 847 P.2d 1360, 1363 (Mont. 1993) and *Am. Commerce Ins. Co. v. Porto*, 811 A.2d 1185, 1199 (R.I. 2002)). Thus, the Court will adopt it and define "sexual molestation" to include an annoying sexual advance and to encompass a broad range of unwanted or inappropriate sexual activities, such as subjecting another individual to indecent or nonconsensual advances for the perpetrator's own sexual gratification. With this definition, the Court easily concludes that the alleged injuries which the Court earlier determined arose from Defendant Glen's sexual assault, harassment and abuse of Plaintiff fall within this definition. As such, both claims against Defendant Glen and the negligence claim against Defendant Meghan premised on the first theory of liability described above are not covered.

17

### C. For the Alleged Injuries Which Could Arise from Defendant Meghan's Independent Conduct, They Are Intentional Acts Not Covered Under the Foremost Policy

As explained above, the second theory of liability for the negligence claim against Defendant Meghan is based on her alleged retaliation against Plaintiffs when they sought to avoid or objected to Defendant Glen's sexual assaults. The Court is skeptical that Plaintiffs have adequately pled that this category of damages manifested as physical injury such that they would fall within the coverage of the Policy. However, the Court need not resolve that issue.

The origin of damages under this theory of liability would be the intentional misconduct of Defendant Meghan. Under this theory of liability, Defendant Meghan was acting with the intent to facilitate the alleged sexual assaults of her husband and/or with the intent to retaliate against Plaintiffs for revealing them. Either way they would be intentional acts intended or reasonably expected to cause harm. Therefore, coverage for such damage would be excluded under the Exclusion Section of the Policy which states that it "will not pay for bodily injury . . . [r]esulting from any act or omission that is intended by any of you to cause any harm or that any of you could reasonably expect to cause harm." UMF 19.

Plaintiffs first argue that this exclusion does not apply because (i) it only excludes actions intended (or reasonably expected) to cause "harm;" and (ii) "harm" in this section cannot mean "emotional harm" as the Policy's coverage section already

18

precludes coverage for emotional harm which would make the provision surplusage. *Doc. 189* at 18-20.  According to Plaintiffs, the intentional infliction of emotional distress (which presumably led to physical injury) would not be excluded by this provision.  *See id*.  Plaintiffs' argument is flawed.  Simply because the Policy limits its coverage to physical injury does not mean that it cannot exclude coverage for intentional acts which cause other injury.  In fact, it is notable that the Policy coverage definitions revolve around defining "injury" whereas in this clause the term used is "harm."  Plaintiffs point to nothing in the policy which would dictate that these two separate words must mean the same thing.  Simply put, if a person intends to or reasonably expects to cause emotional damage, they intend to cause "harm" as that term would ordinarily be understood.  *See Harm*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/harm (defining "harm" as "physical or mental damage: injury") (last visited Mar. 24, 2025).  The Court finds Plaintiffs' contrary interpretation strained and unreasonable.  Plaintiffs also argue that "intentional-torts limitations generally do not preclude coverage against negligence claims."  *Doc. 189* at 20.  While perhaps true in many cases, applying this intentional-acts exclusion to this theory of liability yields a different result.

## V.  CONCLUSION

Because the damages alleged from the claims against Defendants Glen and Meghan originate from either sexual molestation or Defendant Meghan's intentional

19

acts, they are excluded from coverage under the Foremost Policy.  Therefore, the Court GRANTS Plaintiff-in-Intervention Foremost Insurance Company Grand Rapids, Michigan's Motion for Summary Judgment (*doc. 165*).

    **IT IS SO ORDERED.**

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**